DE LOCKERBY *v.* D'ARCHANGELO.

1. APPEAL AND ERROR—DIRECTED VERDICT.

In reviewing directed verdict in favor of defendants, testimony must be viewed in light most strongly tending to support plaintiff's claim.

2. EXCHANGE OF PROPERTY—FRAUD—REPRESENTATIONS BY THIRD PERSON—PRINCIPAL AND AGENT.

Rule that statement by owner, made during negotiations for exchange of property, that it was worth sum in excess of its real value does not amount to fraud, applies only to statements made by parties themselves, and not to one made by third person acting on behalf of party claiming to have been defrauded.

3. SAME—BROKERS—PRINCIPAL AND AGENT—FRAUD—AGENT MUST ACT IN GOOD FAITH.

Broker acting as agent in exchange of real estate is charged with duty of protecting principal's interests, and he must act in good faith in representing value of respective properties.

4. BROKERS—FRAUD—LIABILITY OF BROKER ACTING AS AGENT.

Where, in exchange of real estate, broker represented to his principal that property he was receiving was worth $7,000, when in fact it was worth only $3,000, broker is liable in action for damages unless jury find from evidence that he acted in good faith and honestly believed representations to be true.

5. EXCHANGE OF PROPERTY—FRAUD—LIABILITY OF OWNER.

Owner of property, who deeded it to plaintiff and received in exchange therefor property from third party who received plaintiff's property, is not liable in action for fraud in misrepresenting value of his property, in absence of showing that he had ever seen plaintiff's property or had any knowledge of its value.

Case-made from Kent; Perkins (Willis B.), J. Submitted January 13, 1931. (Docket No. 107, Calendar No. 35,393.) Decided February 27, 1931.

Case by Ivan De Lockerby, administrator of the estate of Minor Walcott, deceased, against Antonio D'Archangelo and others for fraud in the exchange of real estate. Judgment for defendants. Plaintiff brings case-made. Reversed as to defendant Joseph J. Bauser. Affirmed as to other defendants.

*Dorr Kuizema,* for plaintiff.

*Francis Williams,* for defendants D'Archangelo.

*Willard McIntyre,* for defendants Bauser.

SHARPE, J. On August 1, 1929, a deal was consummated whereby Minor Walcott conveyed to one Stevens 27½ acres of land in the township of Ada, in Kent county; Stevens conveyed to the defendants D'Archangelo a house and lot on Norwood avenue, in the city of Grand Rapids, and Mr. and Mrs. D'Archangelo conveyed to Walcott a lot, on which was a building used as a restaurant and residence, in the city of Grand Haven. The exchange of properties was brought about by the defendant Joseph J. Bauser, a real estate agent in the city of Grand Rapids. Mr. Walcott died soon thereafter at the age of 81 years. The plaintiff, a son-in-law, was duly appointed administrator of his estate with the will annexed. He brings this action against Mr. and Mrs. D'Archangelo and Mr. and Mrs. Bauser to recover damages, based upon fraudulent representations claimed to have been made by them as to the value of the Grand Haven property. The trial court, at the conclusion of plaintiff's case, directed a verdict for the defendants, on which a judgment was entered. Plaintiff seeks review by case-made.

The deceased and his wife and his son Emmet had lived upon this small farm about eight years. The

wife died about a month before the exchange of properties was made. A housekeeper was thereafter employed. The father had been blind for several years. He was receiving a pension of $90 per month as a civil war veteran. Emmet had spent some time in the Kalamazoo State Hospital in 1926, and before that in similar institutions in Illinois and Ohio. But little produce had been grown upon the farm. The father was anxious to exchange it for property out of which Emmet could make a living. Bauser's attention was directed to it by an advertisement in a newspaper. He visited the property, saw the deceased and Emmet, and was told by the deceased "if you can make a good trade like Emmet wants, go ahead and do it." He suggested several deals which were not satisfactory. A few days before the exchange was consummated, he and Emmet visited the Grand Haven property. It consisted of a lot, located near the factory district, on which was a one-story cement block building, containing some living rooms and a room with a counter, in which soft drinks and tobacco and candy were sold.

A verdict for defendants having been directed, the testimony must be viewed in the light most strongly tending to support plaintiff's claim. Emmet testified that, when they visited the Grand Haven property and looked through it, "Mr. Bauser recommended it very highly. He said he believed that would be a good proposition there, no reason why it wouldn't be a good income there. * * * He said it was worth about $7,000. * * * I had to take Mr. Bauser's word for it."

As to the statements of Mr. and Mrs. D'Archangelo, he testified:

"It is hard to recall the conversation, but Mr. and Mrs. D'Archangelo recommended the place very

highly and spoke of a lot of things that we could buy there cheap at a discount and make a lot of money on it. They said they had been doing quite a business there in serving meals. Mr. D'Archangelo, the owner of the premises, said that. Mrs. D'Archangelo didn't say anything to me. She went through the rooms and showed us the rooms. She said those rear rooms there were rented to some Detroit people that was tourists. She said we could do quite a good business there with tourists. Mr. D'Archangelo said his property was worth about $7,000.''

The deceased had listed his farm property with Bauser to be sold for $8,000. Emmet testified that his father ''consented to drop down to $7,000 to make an even trade all the way around;'' that he presumed he had some influence in securing such consent.

Frank L. Brooks, a real estate broker of Grand Rapids, testified that in his judgment the farm of 27½ acres was worth $300 per acre.

Ralph E. Brandau, engaged in ''real estate insurance'' in Grand Rapids, testified that its fair market value was about $7,000.

Two witnesses, engaged in the real estate business in Grand Haven, testified that the market value of the property there was about $3,000.

On the evidence submitted, the jury would have been justified in finding that the deceased parted with property worth $7,000 and received therefor property worth $3,000. That both he and Emmet relied upon the defendant Bauser to see that their interests were protected in the deal is apparent. He was engaged in the real estate business. He secured a listing of the property from the deceased, the sale price being $8,000. He was looked upon by them as a man in their employ, and, after the deal was completed, he received a commission on the sale of the

farm property of $330. Both the deceased and his son Emmet no doubt felt that they could rely on his judgment that the farm and the Grand Haven property were of about the same value, and that the latter was reasonably well suited to the purpose for which the exchange was made. That Emmet was no judge of the value of property must have been apparent to Bauser. He did not see any business being done about the place at Grand Haven when he was there; he made no inquiries as to the amount of business that had been done; did not ask to see any books which would reveal it, but apparently wanted to get away from the farm, and on the assurances of value and the condition of the business concluded that it would be a good deal for his father to make, and so advised him.

While this court has held that—

"a statement by defendants, made during negotiations for the exchange of their farm, that it was worth a sum in excess of its real value did not amount to fraud." *Bowen* v. *Stocklin*, 215 Mich. 341 (syllabus)—

the rule thus stated applies only to statements made by the parties themselves, and not to one made, as here, by a third person acting on behalf of the party claiming to have been defrauded. To relieve the defendant Bauser of responsibility, a jury must find from the evidence submitted that he acted in good faith and honestly believed that the statements made by him were true. He was not selling his own property to the deceased. He was acting as agent for him in the sale of his farm, and was charged with the duty of protecting his interests, and should not have induced him by a false statement to exchange it for property of about one-half its value.

As to D'Archangelo, a different question is presented. He had never seen the farm of the deceased, and did not exchange his property for it. He had no knowledge of its value. At Bauser's request, he assisted in completing the deal by conveying the property at Grand Haven to the deceased and receiving in exchange therefor a conveyance of property in Grand Rapids from Stevens. The record does not disclose that he had any knowledge of the purpose of the deceased in effecting the exchange or, as before stated, of the value of his farm. What he said about value may fairly be said to be within the holding in the *Bowen Case* above quoted. There is usually a distinction between market value and the trade-in value a man puts upon his property. This defendant's only concern was the value of the property he was to receive from Stevens, and in our opinion the trial court committed no error in directing a verdict in his favor. The record contains no justification for making either his wife or Mrs. Bauser parties defendant. As to these three, the judgment is affirmed, with costs. As to Mr. Bauser, it is reversed, with costs, and a new trial granted.

BUTZEL, C. J., and WIEST, CLARK, McDONALD, POTTER, NORTH, and FEAD, JJ., concurred.